JOSEPH S. HIGDON *v.* MARTHA BECK, ETC.

**Wills—Bequest of Property to Its Owner—Rights of Creditors.**
Where money is bequeathed to one to whom it in fact belonged, the donee cannot, by election to hold it as a bequest, prevent his creditors from subjecting it to payment of their debts.

**Estoppel—Conniving With Debtor to Defraud Creditors.**
One who connives with a debtor for the purpose of defrauding the latter's creditors cannot subsequently be heard to complain of his situation as a consequence of such action.

APPEAL FROM McCRACKEN CIRCUIT COURT.

September 30, 1873.

OPINION BY JUDGE PRYOR:

The evidence conduces to show that both Bomar and Walton were engaged in buying tobacco during the war in the name of the decedent, Powell, and shipping it for sale to their commission merchants in New York, Watts Crane & Co., the latter firm had knowledge of the fact from Powell himself that the tobacco marked B. belonged to Bomar. After the death of Powell the

merchants in New York for the protection of Bomar's interest passed an amount of money from their firm to the firm of Watts, Given & Company in Paducah, this sum amounting to about $11,000 was regarded as the proceeds of the Bomar tobacco. The will of Powell, when taken in connection with the proof in the cause, strengthens the conclusion that the tobacco marked B. 60 hogsheads, belonging to Bomar, he devises that same tobacco to Bomar, requiring him to pay the costs of shipment, etc., to the exclusion of his mother or next of kin evidently to avoid any trouble in regard to it, after his death. We see no reason why Bomar should not have prosecuted his suit himself against Powell's administrator, and recovered the value of this tobacco, not as devise, but in his own right. The tobacco belonged to him and he was entitled to the proceeds. Walton's claim against Powell may be just, still Powell's estate alone is liable for its payment and not Bomar. Bomar can not, by electing to hold as devisee, prevent his, Bomar's, creditors from subjecting this money to their debts if it really belonged to him, and this the proof clearly shows. It is insisted herein that Walton shipped tobacco to Powell in the same way, and therefore is entitled to the proceeds of a part of them to pay his debt and the question really is who has the preference, Walton or Bomar; if Bomar has, his creditors are entitled to it. Walton can not assert claim to it because it belongs to Powell's estate, as the facts show that it is either Bomar's money or Walton's. Bomar or his creditors, the appellees, have garnisheed this money in the hands of Watts, Jones & Co. This firm had a sum sufficient to have paid all the debts. The money was paid by them to Husband, about $9,000. The appellees had acquired a prior lien to Walton by reason of their garnishment and, although this fact was known to the latter, not only the pendency of the suits but the fact that the garnishee had been sued, still Walton permitted $6,000 of the money to be paid to Bomar when he says he was not entitled to it and risks his chances of recovering in the litigation with the appellees. Husbands passed over to Bomar all the money except a sum sufficient or necessary to pay these debts of the appellees, and the appellant knowing that fact, as the proof clearly indicates, asserted no claim whatever to one cent of the money in Bomar's hands. The proof shows that Walton came from Tennessee with Bomar, and filed his petition to be made a party to appellee's suit on the

very day Husbands paid Bomar the money and, in fact, Bomar, the Tennessee executor, was with Walton in the office of Husbands when the latter was employed to prosecute his claim and, what is remarkable, Bomar then had $6,000 of the money, $2,900 of which Walton says belonged to him, the proceeds of his portion of tobacco that had been sold by Powell as the ostensible owner, and he is content to see the Kentucky administrator pay this money to Bomar, who had no right to receive $2,900 of it, at least if Walton's statement is true, and look alone to the sum in litigation by the appellees who had secured it by attachment and garnishment for indemnity, and when this sum was entirely insufficient to pay all the debts the liberality of the appellant towards Bomar can only be accounted for upon the idea that the two were endeavoring to prevent the creditors of Bomar from making their honest demands, and this conclusion is warranted from the facts developed.

The judgment of the court below must be *affirmed*.

*L. D. Husbands, for appellant.*

*Quigley, for appellees.*